UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KEVIN ROBERT BLAIR,                    )
                                       ) No. CV-09-0314-CI
            Plaintiff,                 )
                                       ) ORDER DENYING PLAINTIFF'S
v.                                     ) MOTION FOR SUMMARY JUDGMENT
                                       ) AND GRANTING DEFENDANT'S
MICHAEL J. ASTRUE,                     ) MOTION FOR SUMMARY JUDGMENT
Commissioner of Social                 )
Security,                              )
                                       )
            Defendant.                 )
                                       )

        BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct.
Rec. 10, 17.)  Attorney Rebecca M. Coufal represents Kevin R. Blair
(Plaintiff); Special Assistant United States Attorney Kathryn A.
Miller represents the Commissioner of Social Security (Defendant).
The parties have consented to proceed before a magistrate judge.
(Ct. Rec. 3.)  After reviewing the administrative record and the
briefs filed by the parties, the court **DENIES** Plaintiff's Motion for
Summary Judgment and directs entry of judgment for the Defendant.

        Plaintiff applied for disability insurance benefits (DIB) on
August 29, 2006. (Tr. 169-73.)  He alleged disability due to
anxiety, neuropathy, gout, hypertension, hypothyroid, and obesity,
with an onset date of July 31, 2005. (Tr. 169, 181.)  Following
denial of benefits at the initial stage and on reconsideration, a
hearing was held before Administrative Law Judge (ALJ) Paul Gaughen

April 10, 2008; a supplemental hearing was held on January 14, 2009. (Tr. 36-107.) Plaintiff was represented by counsel at both hearings. Plaintiff and his spouse, Brenda Blair, testified at the first hearing; at the second hearing Plaintiff, medical expert Ronald Klein, Ph.D., and vocational expert Deborah LaPoint testified. On February 13, 2009, ALJ Gaughen denied benefits. (Tr. 25-34.) The Appeals Council denied review, and this appeal followed (Tr. 1-4.) Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin*. 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not

1  substitute its judgment for that of the Commissioner. *Tackett*, 180

2  F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

3  The Commissioner's findings are upheld if supported by inferences

4  reasonably drawn from the evidence. *Batson v. Commissioner of*

5  *Social Sec.*, 359 F.3d 1190, 11193 (9th Cir. 2004). Nevertheless, a

6  decision supported by substantial evidence will be set aside if the

7  proper legal standards were not applied in weighing the evidence and

8  making the decision. *Brawner v. Secretary of Health and Human*

9  *Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial

10 evidence to support the administrative findings, or if there is

11 conflicting evidence that will support a finding of either

12 disability or non-disability, the finding of the Commissioner is

13 conclusive. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005);

14 *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

15                          **SEQUENTIAL PROCESS**

16      Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the

17 requirements necessary to establish disability:

18           Under the Social Security Act, individuals who are
        "under a disability" are eligible to receive benefits. 42
19      U.S.C. § 423(a)(1)(D). A "disability" is defined as "any
        medically determinable physical or mental impairment"
20      which prevents one from engaging "in any substantial
        gainful activity" and is expected to result in death or
21      last "for a continuous period of not less than 12 months."
        42 U.S.C. § 423(d)(1)(A). Such an impairment must result
22      from "anatomical, physiological, or psychological
        abnormalities which are demonstrable by medically
23      acceptable clinical and laboratory diagnostic techniques."
        42 U.S.C. § 423(d)(3). The Act also provides that a
24      claimant will be eligible for benefits only if his
        impairments "are of such severity that he is not only
25      unable to do his previous work but cannot, considering his
        age, education and work experience, engage in any other
26      kind of substantial gainful work which exists in the
        national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus,
27      the definition of disability consists of both medical and
        vocational components.

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

## STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. Plaintiff was 44 years old at the time of the hearing. (Tr. 49.) He had an 11th grade education and a high-school equivalency degree. He obtained a real estate license that was expired at the time of the hearing, and computer certification. (Tr. 48.) Plaintiff testified he spent a short time in the military but was discharged due to anxiety problems. (Tr. 49.) Plaintiff has past work experience as a file clerk, an office helper, a weed inspector and a casino host. (Tr. 89.) At the time of the hearing, Plaintiff was living with his spouse and daughter-in-law. (Tr. 63.) He stated he could not work because of panic attacks and an inability to stand on his feet for any length of time. (Tr. 50.) He later testified he could stand for an hour and walk for 15 to 20 minutes before he experienced pain in his feet, which he attributed to neuropathy. (Tr. 57, 67.) He stated he had low energy and low blood sugar due to diabetes. Plaintiff reported he was unable to be around people and suffered serious panic attacks when he had to be with the public. (Tr. 54-57.) He also reported a problem with alcohol, which he used

excessively to "self medicate." (Tr. 60-61.) However, he stated he had quit drinking a few months before the hearing. (Tr. 61.)

## ADMINISTRATIVE DECISION

The ALJ found Plaintiff was insured for DIB through September 30, 2008. (Tr. 27.) At step one, he found Plaintiff had not engaged in substantial gainful activity since July 31, 2005, the alleged onset date. (*Id.*) At step two, he found Plaintiff had the severe impairments of alcohol dependence in remission, anxiety-related disorder, diabetes mellitus, and hypertension subject to variable control. (*Id.*)

At step three, the ALJ found Plaintiff's impairments, alone or in combination, did not equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings). (Tr. 28-30.) At step four, he determined Plaintiff had the residual functional capacity (RFC) to perform medium work with several non-exertional physical and mental limitations. (Tr. 30.) The ALJ found Plaintiff's statements regarding the intensity of his symptoms and work related limitations were not credible to the extent they were inconsistent with the RFC findings. (Tr. 31-33.) Considering vocational expert testimony, the ALJ found Plaintiff could still perform his past work as a weed inspector and file clerk as actually and generally performed. (Tr. 33.) He concluded Plaintiff was therefore not under a disability as defined by the Social Security Act. (Tr. 34.)

## ISSUES

The question presented is whether there is substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

contends the ALJ erred when he: (1) failed to identify panic disorder, personality disorder, and peripheral neuropathy as severe impairments at step two; (2) improperly assessed his credibility; (3) failed to fully develop the record; and (4) improperly evaluated medical evidence. (Ct. Rec. 11 at 10-19.)

**DISCUSSION**

**A.   Credibility**

Plaintiff argues that the ALJ's credibility determination is not supported by legally sufficient reasons. (Ct. Rec. 11 at 13-16.) *De novo* review of the record does not support this assertion. The ALJ summarized Plaintiff's testimony, written disability report, function reports, and statements to medical providers and made specific credibility findings explaining why he discounted Plaintiff's allegations to the extent they were inconsistent with the final RFC assessment. (Tr. 30-33.)

Although credibility determinations are the sole province of the ALJ, when the adjudicator finds a claimant's statements regarding the severity of impairments and limitations are not credible, he must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's allegations. *Richardson,* 402 U.S. at 400; *Thomas v. Barnhart,* 278 F.3d 947, 958-59 (9th Cir. 2002); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Nonetheless,

An ALJ cannot be required to believe every allegation of

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

> disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423 (d)(5)(A). . . . This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain; many medical conditions produce pain not severe enough to preclude gainful employment.

*Fair*, 885 F.2d at 603.  Further, in assessing credibility, the ALJ need not totally reject or accept a claimant's statements.  Based on consideration of all the evidence in the record, the ALJ may find the claimant's statements regarding limitations, symptoms, and pain credible "to a certain degree."  *SSR* 96-7p.

If there is no affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's allegations regarding the severity of symptoms.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ engages in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  Under the first step, the ALJ must find the claimant has produced objective medical evidence of an underlying impairment, and that the impairment, or combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986).  Once the *Cotton* test is met, the ALJ must evaluate the credibility of the claimant.  In addition to ordinary techniques of credibility evaluation, the ALJ may consider the following factors when weighing the claimant's credibility:  the claimant's reputation for truthfulness;  inconsistencies either in his allegations of limitations or between his statements and conduct; daily activities

and work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Fair*, 885 F.2d 597 at n.5.    Evidence of a tendency to exaggerate and secondary gain motives are legitimate reasons to discount a claimant's symptom allegations.    *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).    The ALJ may also consider an unexplained failure to follow treatment recommendations and testimony by the claimant "that appears less than candid." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).    If the ALJ's credibility finding is supported by substantial evidence in the record, "the court may not engage in second-guessing."  *Thomas,* 278 F.3d at 959; *Fair*, 885 F.2d at 604.

    As found by the ALJ, Plaintiff met his burden to provide evidence of medical conditions, *i.e.,* diabetes and anxiety related disorder, that could be expected to cause the alleged symptoms. (Tr. 31.)  The ALJ then identified objective evidence of Plaintiff's tendency to exaggerate limitations.   (Tr. 32.)   Plaintiff argues this is not "affirmative evidence" of malingering and, therefore, insufficient to reject his credibility.    However, the ALJ gave other "clear and convincing" reasons supported by substantial evidence for discounting Plaintiff's statements.[1]  (Tr. 32-33, 344.)

---

    [1] As explained by the Commissioner in his policy ruling, the ALJ need not totally reject a claimant's statements; he or she may find the claimant's symptom testimony to be credible to a certain

For example, contrary to Plaintiff's reports of disabling panic attacks, the ALJ found examining psychologists did not opine his panic attacks precluded all work and suggested Plaintiff's ability to work in more social environments might be improved if he accessed recommended counseling services. The ALJ also noted observations from examining doctors that Plaintiff's reported alcohol abuse might be worsening his panic attacks. As reported by Plaintiff, he was drinking excessive amounts of alcohol to "self-medicate," but when he stopped and started prescribed medication, he reported medication helped him "stay normal." (Tr. 31, 267.) The ALJ also referenced Plaintiff's report that he could work alone in an office or with limited social interaction as inconsistent with his allegations of total disability. (Tr. 32, 269.)

As for the alleged neuropathy symptoms and exertional limitations, the ALJ found diagnosed diabetes and gout could cause limitations, but medical sources found no evidence to support the degree of limitation alleged. (Tr. 32-33.) This finding is supported by medical records showing Plaintiff denied numbness and tingling in

---

degree, but discount statements based on his interpretation of evidence in the record as a whole. *Social Security Ruling (SSR)* 96-7p. Although Social Security Rulings are not published in the federal register and do not have the force of law, under the case law, deference is to be given to the Commissioner's interpretation of the Regulations. *Ukolov v. Barnhart*, 420 F.3d 1002 n.2 (9th Cir. 2005); *Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

June 2006, and infrequently reported problems standing.  Clinic notes also include observations by Plaintiff's treating physician of normal gait and strength, and no signs of gout on exam. (Tr. 366.) The ALJ specifically noted observations of the examining psychologists during testing: Plaintiff "displayed no pain behaviors, sat easily and quickly and remained seated for an hour without discomfort or significant postural changes, stood easily and walked quickly and fluidly."  (Tr. 33, 268, 346.)  The ALJ's credibility findings are a rational interpretation of the record in its entirety.  Plaintiff has made no showing that the ALJ erred in his reasoning.  The ALJ's credibility findings are specific, "clear and convincing" and, thus, will not be disturbed.

**B.    Step Two: Severe Impairments**

Plaintiff argues that the ALJ should have included "all diagnoses of the psychologists" and "peripheral neuropathy," allegedly diagnosed by his treating doctor, as severe impairments. (Ct. Rec. 11 at 11.)  To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. §§ 404.1508; *Taylor v. Heckler*, 765 F.2d 872, 876 (9th Cir. 1985).  However, the standard for a severe impairment at step two is not satisfied by diagnosis alone.  As explained by agency regulations and case law, the fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations.  *See, e.g., Edlund*, 253

F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

On review, it is noted that while neuropathy is a recognized complication of diabetes (*See* Listing 9.08) that may preclude work activities, the record contains no formal diagnosis by an acceptable medical source of "peripheral neuropathy," as contended by Plaintiff. *See* 20 C.F.R. § 404.1527(a). The August 26, 2006, clinic note cited by Plaintiff as support for his contention that he has medically determinable neuropathy states only that Plaintiff was "complaining" of diabetic peripheral neuropathy. (Tr. 280.) Nonetheless, on exam that day, treating physician Richard Gascoigne, M.D., found "no signs of gout, joint effusions or celluli0tis"; and his notes contain no assessment or diagnosis of neuropathy. (*Id*.) Clinic notes also indicate Dr. Gascoigne discussed with Plaintiff the effects of Plaintiff's excessive drinking on gout. (Tr. 288, 290). Further, an assessment by Dr. Gascoigne of "slight decreased sensation over the ball of the right foot" (Tr. 280), does not support a diagnosis of peripheral neuropathy and is insufficient to satisfy the step two requirement for a medically determinable impairment.

As discussed above, the ALJ properly found Plaintiff's alleged neuropathy symptoms are not reliable because they are unsupported by medical evidence and inconsistent with observations of examining psychologists Severingson and Everhart. A claim of disabling "neuropathy" is also inconsistent with Plaintiff's own report to his treating physician that he could stand several hours before experiencing pain in his feet. (Tr. 366, 379.) Because the record

does not contain a physician's diagnosis of neuropathy, the ALJ did not err in excluding it from the step two findings. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005) (medical diagnosis based on clinical diagnostic techniques required to support finding of impairment).  The ALJ properly noted and discounted Plaintiff's reported limitations in standing, based on the assessment of episodic gout due to alcohol abuse and diabetes. (Tr. 33, 280, 290.)  The ALJ properly addressed the credible exertional symptoms in the final RFC determination by including a sit/stand option. (Tr. 30.)  Thus, even if sporadic gout were erroneously excluded as a non-severe impairment, Plaintiff was not prejudiced; therefore any error would be harmless.  *See Shinseki v. Sanders*, 129 S.Ct. 1696, 1706 (2009) (burden to show harm of claimed error on party attacking agency determination).

Regarding panic attacks, Plaintiff's argument is without merit. The ALJ identified Anxiety Related Disorder as a severe impairment. As stated in Listing 12.06, in anxiety related disorders, anxiety is the predominant disturbance, accompanied by "recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom . . . ." *See* Listing 12.06 A 2.  Plaintiff fails to show how the exclusion of "panic attacks" in the step two findings prejudiced him when (1) panic attacks are included in the general category of "Anxiety Related Disorder," an identified severe mental impairment at step two, and (2) the ALJ acknowledged in his step four findings that Plaintiff had moderate mental limitations in social functioning due to panic attacks.

Finally, Plaintiff's conclusory argument that it was error of law to exclude personality disorder as a severe impairment is rejected. (Ct. Rec. 11 at 11.) Because Plaintiff fails to argue this issue with specificity in his briefing, the court will not address it on appeal. *See Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). The ALJ's step two findings are supported by substantial evidence and free of legal error.

**C.  Development of the Record**

Plaintiff appears to argue remand is necessary to allow consideration of medical records allegedly lost by the agency. He speculates 45 pages of clinic notes from North Basin Medical Clinic that were submitted prior to the first ALJ hearing may not have been reviewed by the ALJ. (Ct. Rec. 11 at 11-13; *see also* Tr. 44.) An ALJ's duty to supplement the record is triggered by ambiguous evidence or when the record is inadequate to properly evaluate the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir 2001); *Tonapetyan*, 242 F.3d at 1150. The claimant must show prejudice or unfairness in the proceedings to be entitled to a remand. *Hall v. Secretary of Health, Ed. and Welfare*, 602 F.2d 1372, 1378 (9th Cir. 1979). Without a showing of prejudice an error may be considered harmless. *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

Here, Plaintiff gives no indication what was included in the alleged missing records, or how they may have changed the outcome. Further, a review of the court file indicates Defendant filed a supplement to the administrative record on review on August 10,

2010, apparently in response to Plaintiff's assertion that the record is incomplete. The supplement includes a missing page from the hearing transcript (Ct. Rec. 16 at 352), and North Basin Medical Clinic notes from treating physician, Dr. Gascoigne. (*Id.* at 353-81.) About 25 pages relate to treatment between August 2006 and July 2007. (Tr. 366-81.) However, Plaintiff did not object to or address the supplemented record in a Reply to Defendant's submission, or explain how he was prejudiced by the omission of these records from the administrative record initially filed with the court. In addition, it is noted on review of the April 10, 2008, hearing transcript that the ALJ was aware of the records in question and specifically stated he had reviewed them prior to the first hearing. (Tr. 44-45.) Plaintiff's assertion that remand is necessary for consideration of additional records by the ALJ fails.

**D.    Lay Witness Testimony**

At the hearing, Plaintiff's spouse testified briefly regarding Plaintiff's limitations. (Tr. 68-71.) Her testimony supplemented a written statement included in the record. (Tr. 211-19.) Plaintiff claims the ALJ failed to consider or address her testimony. (Ct. Rec. 11 at 16.) This argument is without merit.

Ms. Blair's testimony is considered a non-medical "other source" evidence. 20 C.F.R. §404.1513(d). Testimony regarding an claimant's symptoms and how they affect his ability to work is competent evidence and must be considered by the ALJ. If testimony from friends or relatives is rejected, the ALJ must give reasons that are "germane" to the witness. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, information from non-medical sources

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

1  cannot establish the existence of an impairment or disability. *SSR*

2  *06-03p*. In evaluating evidence from family members, the ALJ may

3  consider whether the statements are consistent with other evidence

4  and other factors that might support or refute the evidence. *Id*.

5  The Commissioner's policy ruling directs as follows:

6     Although there is a distinction between what an
       adjudicator must consider and what the adjudicator must
7     explain in the disability determination or decision, the
       adjudicator generally should explain the weight given to
8     opinions of these [non-medical] "other sources," or
       otherwise ensure that the discussion of the evidence in
9     the determination or decision allows a claimant or
       subsequent reviewer to follow the adjudicator's reasoning
10    <u>when such opinions may have an effect on the outcome of</u>
      <u>the case</u>.
11

12  *SSR* 06-03p, *Evidence from "Non-Medical Sources"*. (Emphasis added.)

13      Here, the ALJ specifically noted Mrs. Blair's testimony and

14  found, "The undersigned also considered the third party function

15  report from the claimant's wife and noted that his daily activities

16  are quite significant." (Tr. 33, 211, 213, 215.)  To that extent,

17  the ALJ accepted the testimony and gave it weight in his

18  determination that Plaintiff was not totally disabled.  Independent

19  review reveals Mrs. Blair's testimony regarding her spouse's

20  limitations and symptoms mirrors Plaintiff's testimony and

21  functional reports, which the ALJ specifically discounted by

22  detailed reference to medical evidence and observations of

23  acceptable medical sources.  (Tr. 30-33, 68-71, 203, 205-08.)

24  Because the court may draw inferences logically flowing from record

25  in its entirety, it follows the ALJ gave similar weight Ms. Blair's

26  similar testimony. *See Valentine v. Astrue*, 574 F.3d 685, 694 (9th

27  Cir. 2009).  Further, Plaintiff fails to specify which testimony

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

from Mrs. Blair regarding his ability to work was erroneously ignored, how it is supported by credible evidence in the record, and in what way her non-medical evidence could have affected the outcome of the case. Without the requisite specificity and analysis supported by the record, Plaintiff has not met his burden to show error. *Shinseki*, 129 S.Ct. at 1706; *Carmickle*, 533 F.3d at 1161 n.2.

**E.   Medical Evidence**

Plaintiff contends the ALJ should have consulted a medical expert regarding his limitations due to the "diagnosed peripheral neuropathy." (Ct. Rec. 11 at 18-19.) However, as discussed above, the medical record does not support a finding of medically determinable neuropathy, and Plaintiff's subjective characterization of his condition is inadequate to trigger further development of the record. *Mayes*, 276 F.3d at 459-60. Independent review of North Basin Medical Clinic records submitted by Defendant and purportedly missing from the records considered by the ALJ confirms the ALJ's interpretation of the medical evidence. Further, the decision to call a medical expert or order a consultative examination is within the discretion of the ALJ. *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989). As consistently ruled by the Ninth Circuit, it is the province of the ALJ to resolve ambiguities and/or conflicts in the medical evidence, and the court may not second guess his determinations as long as they are supported by the record. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Andrews*, 53 F.3d at 1039 (if supported by substantial evidence, findings of the Commissioner

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

shall be affirmed even if "evidence is susceptible to more than one rational interpretation").

The clinic notes at issue show that between May 2004 and July 2007, Plaintiff was seen by Dr. Gascoigne seven times, primarily for the effects of alcohol abuse and treatment of uncontrolled blood pressure. (Tr. 360-81.) In May 2004, Dr. Gascoigne assessed alcohol abuse withdrawal and noted Plaintiff's decreased anxiety since being on Paxil. The next record is dated August 8, 2006, and indicates an assessment of diabetes. Dr. Gascoigne observed normal gait and station, normal strength, and resolved numbness, tingling and calf pain from Plaintiff's new job, which he reported involved standing on his feet for five hours. (Tr. 366.) Plaintiff denied back pain. Plaintiff returned to North Basin Medical Clinic in December 2006 to discuss his drinking problem and intention to quit. (Tr. 368.) Clinic notes indicate Plaintiff reported no physical complaints, and Dr. Gascoigne made no physical findings. His assessment includes alcohol abuse and diabetes, but did not mention neuropathy or gout. (*Id*.) The next note is dated January 19, 2007, and indicates uncontrolled hypertension, gout, diabetes, alcohol abuse. The primary concern was hypertension. At that time, Dr. Gascoigne recommended formal alcoholism counseling, but Plaintiff declined. (Tr. 371.) In February 2007, notes indicate a diabetic follow-up for lab result and medication check; neither neuropathy nor gout was diagnosed. (Tr. 373.) In April 2007, Plaintiff reported deceased panic attacks with Paxil, decreased alcohol use and reported feeling better with "no problems physically." (Tr. 376.) The doctor noted a history of gout, diabetes, anxiety with panic attacks. The last

clinic note is dated July 10, 2007. (Tr. 379-80.) Plaintiff complained of occasional numbness and slight burning pain in his feet. Based on Plaintiff's report, Dr. Gascoigne assessed situational panic attacks around people. The doctor's formal assessment also included diabetes, obesity, hypertension, a history of gout and increased cholesterol. (*Id.*) He also noted Plaintiff declined new medication for "diabetic neuropathy, etc." (Tr. 380.) This is the only mention of neuropathy in the physician's notes.

Although Plaintiff's representative requested a consultative examination to explore allegations of peripheral neuropathy, the ALJ decision not to order one was not erroneous. An adjudicator has broad discretion in ordering consultative exams, which are to resolve conflicts or ambiguities "if one exists." 20 C.F.R. § 404.1519a(a)(2). The ALJ reasonably determined the evidence in its entirety does not establish the existence of medically diagnosed peripheral neuropathy; therefore additional medical evidence was not necessary.

Substantial evidence supports the ALJ's interpretation of the medical evidence, his step two findings and final RFC determination. Plaintiff's contention that the ALJ substituted his own speculative opinion for medical evidence is not supported by reference to the record or cogent analysis. Because the ALJ's decision is supported by substantial evidence, it may not be disturbed. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 10)** is **DENIED.**

2. Defendant's Motion for Summary Judgment dismissal **(Ct.**

1   **Rec. 17)** is **GRANTED.**

2          The District Court Executive is directed to file this Order and

3   provide a copy to counsel for Plaintiff and Defendant.  The file

4   shall be **CLOSED** and judgment entered for **Defendant.**

5          DATED December 7, 2010.

6

7                        _____S/ CYNTHIA IMBROGNO_____
                          UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19